UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Robert Brooks Hoel, | Case No.: 0:25-cv-02342 (ECT/LIB) |
| Plaintiff, | |
| v. | |
| Deputy Alexander Prouse, Officer Joseph Carter, Doe #1, the City of Proctor, and St. Louis County, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF THE CITY OF PROCTOR AND OFFICER JOSEPH CARTER'S MOTION TO DISMISS**

### INTRODUCTION

The City of Proctor and former Officer Joseph Carter seek dismissal of Plaintiff Robert Brooks Hoel's Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Hoel's Complaint fails to allege sufficient facts to support any of his constitutional violations, and his *Monell* claim similarly fails. Hoel's state tort claim is additionally time-barred.

### FACTS

This case arises from St. Louis County Deputy Alexander Prouse's inquiry into a vehicle parked near an artesian well close to midnight on March 10, 2022.

Plaintiff Robert Brooks Hoel was filling up jugs with well water off of Old Highway 61, near Proctor, Minnesota. *Compl.*, ¶13, *ECF Doc. 1*. This area is known for thefts during the night hours. *Compl. Exhibit A* ¶1, *ECF Doc. 1-1*.[1] Deputy Prouse was driving his marked police vehicle nearby and noticed a vehicle near the well. *Id*. Deputy Prouse approached the scene and saw a grey Lexus SUV with its lights on and a man filling empty milk jugs with water. *Id*. ¶2. Deputy Prouse approached the man and asked Hoel for his name, though Hoel refused. *Id*. Instead, Hoel responded he was only filling up water, was very cold, and would not answer any of Deputy Prouse's questions. *Compl.* ¶14; *Ex. A* ¶2. Hoel also began to record this interaction on his phone. *Compl.* ¶15.

Deputy Prouse returned to his police vehicle and noticed the vehicle information on his computer was inconsistent with what he observed on-scene. *Ex. A* ¶3. The Lexus registration tags detailed a 2022 registration, while Deputy Prouse's computer showed the Lexus registration expired in May 2021. *Id*. Deputy

---

[1] The facts are drawn from Hoel's Complaint and are accepted as true for the purposes of this motion to dismiss only. *Kohl v. Casson*, 5 F.3d 1141, 1148 (8th Cir. 1993). Facts are also drawn from the Police Report attached to Plaintiff's Complaint as Exhibit A. Eighth Circuit precedent permits consideration of "materials 'necessarily embraced by the pleadings,' including exhibits attached to the complaint and matters of public record." *Buckley v. Hennepin Cnty.*, 9 F.4th 757 (8th Cir. 2021) (quoting *Greenman v. Jessen*, 787 F.3d 882, 887 (8th Cir. 2015)). Such evidence may not, however, be viewed for the truth of the matters asserted. *Kushner v. Beverly Enters., Inc.*, 317 F.3d 820, 831–32 (8th Cir. 2003).

Prouse believed the Lexus may be displaying stolen registration stickers. *Id*. Deputy Prouse approached the car and asked Hoel what he knew of the registration stickers; Hoel replied he did not know anything. *Id*. The driver, a woman named Uoksophea Chhit, responded the registration should be current, and provided Deputy Prouse with her identification. *Id*. There was also a strong odor of marijuana emanating from the vehicle. *Id*. Deputy Prouse returned to his police vehicle and ran a query on Ms. Chhit. *Id*. ¶4.

The query returned an active Domestic Abuse No Contact Order ("DANCO") and an active Harassment Restraining Order ("HRO"). *Ex. A* at ¶5. Ms. Chhit is the Respondent in both orders. *Id*. Deputy Prouse returned to the vehicle to identify the man and ensure no court order was being violated. *Id*.

Proctor Police Department Officer Joseph Carter arrived on scene to assist Deputy Prouse. *Ex. A* ¶6. Deputy Prouse advised Hoel he needed to identify himself to ensure no court order was being violated. *Id*. Hoel refused. *Id*. Deputy Prouse and Officer Carter next instructed Hoel to step out of the Lexus and follow him to Prouse's police vehicle to speak in private. *Id*.; *Compl*. ¶16. Hoel did step out but then began sitting back in the Lexus. *Id*. Deputy Prouse advised Hoel he would be handcuffed and detained if he refused. *Id*. ¶7.

Hoel stepped out of the vehicle, turned around, and put his hands behind his back. *Ex. A* ¶7. As Deputy Prouse grabbed Hoel's arms, Hoel quickly shoved

his left hand into his front pants pocket while tensing his arm muscles. *Id*. These actions necessitated Deputy Prouse needing to use more force to place the handcuffs. *Id*. Deputy Prouse told Hoel to stop resisting. *Id*. Deputy Prouse used his knee and shoulder to apply pressure to the left side of Hoel's body to prevent Hoel from accessing any potentially dangerous items in his front pockets. *Id*. During this process, some of Hoel's property was stepped on. *Compl.* ¶16. Hoel alleges officers stopped the recording on his phone. *Compl.* ¶18. Deputy Prouse was successful in placing Hoel in handcuffs and then placed Hoel in the rear of the police vehicle. *Id*.; *Compl.* ¶20.

Deputy Prouse walked back to the Lexus and spoke with Ms. Chhit, who informed him the man was named Robert Brooks Hoel. *Id*. ¶8. Deputy Prouse ran Hoel's name in his computer system and found an active misdemeanor Promise to Appear warrant, but Wright County would not extradite him. *Id*. Hoel was cited for Obstruction of Legal Process and released from the police vehicle. *Id*. The Lexus was searched due to the smell of marijuana, and marijuana, drug pipes, and grinders were seized and disposed of. *Id*. Doe #1 assisted with the search of the Lexus. *Compl.* ¶22.

Hoel filed this suit on June 4, 2025, alleging Section 1983 claims against former Officer Carter and Deputy Prouse for constitutional violations including Fourth Amendment unreasonable seizure, excessive force, failure to intervene (as

to Officer Carter), unreasonable search, and First Amendment retaliation, as well as a Civil Rights Conspiracy under 42 U.S.C. § 1985(3). He also asserts a *Monell* claim against the City of Proctor and a tort claim for intentional infliction of emotional distress against former Officer Carter. Hoel's conversion and malicious prosecution claims are only asserted against Prouse.

## STANDARD OF REVIEW

A civil complaint must be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A dismissal for failure to state a claim "serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the unnecessary pretrial and trial activity." *Young v. City of St. Charles, Mo.*, 244 F.3d 623, 627 (8th Cir. 2012).

To survive a motion to dismiss, a complaint must allege facts sufficient to "plausibly give rise to entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Gomez v. Wells Fargo*, 676 F.3d 655, 660 (8th Cir. 2012). This standard requires that a complaint contain allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

On a motion to dismiss, a court must take the plaintiff's factual allegations as true. *Iqbal*, 556 U.S. at 678–79. This, however, does not apply to legal conclusions. *Id.* "[A] formulaic recitation of the elements of a cause of action will not do."

*Twombly*, 550 U.S. at 555. In addition, factual allegations may be so indeterminate that they require "further factual enhancement" to state a claim. *Id*. at 557.

## ARGUMENT

### I. OFFICER CARTER IS ENTITLED TO QUALIFIED IMMUNITY

Hoel asserts former Officer Carter violated his rights by 1) unlawfully seizing/arresting him; 2) using excessive force; 3) retaliating against him for exercising his first amendment rights; 4) illegally searching the Lexus; 5) being a part of a conspiracy to violate his rights; and 6) failing to prevent a civil rights violation. Hoel's claims, however, are all barred by qualified immunity. "Qualified immunity shields public officials from liability for civil damages if their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Dillard v. O'Kelley*, 961 F.3d 1048, 1052 (8th Cir. 2020). Qualified immunity is a question of law to be decided by the district court, and it is "immunity from suit rather than a mere defense to liability." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id*.

To determine whether former Officer Carter is entitled to qualified immunity, the Eighth Circuit ask two questions: "(1) whether the facts, viewed in

the light most favorable to the plaintiff, demonstrate the deprivation of a constitutional or statutory right; and (2) whether the right was clearly established at the time of the deprivation." *Parrish v. Ball*, 594 F.3d 993 (8th Cir. 2010). The court may consider these steps in any order, but "[u]nless the answer to both of these questions is yes, the defendants are entitled to qualified immunity." *Pearson*, 555 U.S. at 231 (2009); *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009).

Here, Officer Carter is entitled to qualified immunity on all alleged violations because Hoel fails to allege sufficient facts to state a claim.

### A. Plaintiff Fails to Establish an Unlawful Arrest and Seizure Because There Was Reasonable Suspicion to Enact an Investigatory Stop.

Hoel first challenges former Officer Carter's assistance with the investigatory detention. An investigatory detention is reasonable if it is supported by either probable cause or an articulable and reasonable suspicion that a crime has occurred. *United States v. Washington*, 455 F.3d 824 (8th Cir. 2006). "Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Prado Navarette v. California*, 572 U.S. 393, 397 (2014); *United States v. Sokolow*, 490 U.S. 1, 7 (1989). "Reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause." *Alabama v. White*, 496 U.S. 325, 330 (1990). The standard "depends

on the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Navarette*, 572 U.S. at 402 (quoting *Ornelas v. United States*, 517 U.S. 690, 695 (1996)). Courts must permit police officers to make "commonsense judgments and inferences about human behavior." *Illinois v. Wardlow*, 528 U.S. 119, 235 (2000).

Handcuffing and placing an individual for a brief period of time to conduct an investigatory detention does not become a *de facto* arrest, particularly here where Deputy Prouse needed to confirm Hoel's identity to determine if an HRO, and DANCO, or perhaps both, were being violated by him or Chhit. *See Waters v. Madson*, 921 F.3d 725, 738 (8th Cir. 2019) (holding handcuffing and placing individual in squad car was not a *de facto* arrest); *Chestnut v. Wallace*, 947 F.3d 1085, 1088 (8th Cir. 2020) (holding handcuffing did not transform to *de facto* arrest).

Here, Hoel refused to identify himself during the course of an investigation into potentially stolen registration stickers and violations of lawful court orders. Hoel was also argumentative and uncooperative. Deputy Prouse needed to briefly detain him to confirm identities and whether an HRO or a DANCO were being violated. Under *Waters* and *Chestnut*, this is a reasonable detention and not a *de facto* arrest. The officers had reasonable suspicion that an HRO may be violated and could take steps to verify identities to confirm if this were the case.

## B. The Force Used Was Reasonable

Next, Hoel appears to claim Officer Carter used excessive force or failed to intervene to stop Deputy Prouse's use of excessive force. Excessive force claims brought pursuant to 42 U.S.C. § 1983 are analyzed as seizures under the Fourth Amendment, meaning a reasonableness standard applies. *Lollie v. Johnson*, 159 F. Supp. 3d 945, 958 (D. Minn. 2016). The use of force is excessive under the Fourth Amendment if it is not "objectively reasonable under the particular circumstances." *Greiner v. City of Champlin*, 27 F.3d 1346 (8th Cir. 1994). In analyzing the "circumstances" at play in any given case, courts consider such factors as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386 (1989).

In *Kohorst v. Smith*, the Eighth Circuit held an arm-bar takedown and pushing down a resisting suspect refusing commands did not arise to a constitutional violation. 968 F.3d 871, 877 (8th Cir. 2020). There, an officer was dispatched after a call concerning highly intoxicated individuals. *Id*. The officer arrived on scene and found only one man. *Id*. at 874. He instructed the man to take his hands out of his pockets and show him his identification. *Id*. The man extended his identification in front of his chest, but as the officer reached for it, the man

9

jerked it away and hid it behind his back. *Id*. The officer grabbed the man's arm and attempted to place him in an escort hold. *Id*. A struggle ensued. *Id*. The officer repeatedly told the man, "Do not fight with me," and instructed him numerous times to place his hands behind his back. *Id*. at 874-875. The man refused to comply, so the officer initiated an arm-bar takedown and took the man to the ground. *Id*. at 875. The Eighth Circuit upheld qualified immunity, reasoning the arm-bar takedown and the pushing down of the plaintiff who, at minimum appeared to be resisting and was not complying with commands, did not rise to the level of force required to constitute a constitutional violation. *Id*. at 877.

In *Imp v. Wallace*, the court found no excessive force was used on an actively resisting person when officers pinned him against a vehicle. No. CIV. 10-509 DSD/JJK, 2011 WL 4396941 (D. Minn. Sept. 21, 2011). There, officers pulled over a man on suspicion of driving while impaired. *Imp*, at *1. The officers administered a series of field sobriety tests and attempted to handcuff the plaintiff. *Id*. Once the plaintiff was handcuffed, the officers attempted a patdown. *Id*. The plaintiff flinched and moved away from officers, all while being verbally argumentative. *Id*. Officers asked the plaintiff to lean over, but the plaintiff refused to comply with their instructions. *Id*. After a second command was also refused, the officers forced the plaintiff's chest and head onto the hood of their police vehicle. *Id*. The plaintiff, however, continued to resist by now arching his back. *Id*. The officers then forced

plaintiff's body forward against the police vehicle to force compliance. *Id*. The plaintiff was eventually successfully placed in the police vehicle and driven to the police station. *Id*. The court found the force used was reasonable because the plaintiff was uncooperative and belligerent. *Id*. at *4.

Here, Hoel's Complaint contains no facts setting forth a use of force by Officer Carter and Hoel simply asserts he did not resist. Based on the report attached to Hoel's Complaint, Deputy Prouse reasonably used his own body to prevent Hoel from accessing what Deputy Prouse thought could be a dangerous weapon. When Deputy Prouse and Officer Carter attempted to handcuff Hoel, Hoel initially offered no resistance and allowed his arms to be put behind his back; however, this did not last. Hoel immediately jerked his left arm forward, noticeably tensing his arm muscles, attempting to reach for something in his front pocket. This necessitated Deputy Prouse using some force to prevent a worse situation. Deputy Prouse used his hands to grab Hoel's left arm, while using his knee and shoulder to push Hoel against the side of the Lexus to prevent Hoel from accessing his front pockets. Deputy Prouse advised Hoel to stop resisting and was finally able to handcuff him. Just like the plaintiff in *Imp*, the officers used a reasonable amount of force by pinning Hoel against the vehicle. *Imp*, at *1. To underscore the point even further, the plaintiff in *Imp* was already handcuffed; Hoel was not. *Id*. Importantly, Deputy Prouse and Officer Carter used less force

here to handcuff Hoel than the officers in *Imp* used with a person who was already handcuffed. *Id*. Like the plaintiff in *Kohorst*, Hoel was combative and resisting. *Kohorst*, at 874. As a result, Deputy Prouse and Officer Carter needed to use force to handcuff Hoel.

As a corollary, Hoel also asserts a failure to intervene claim, though this similarly fails. To state a failure to intervene claim, Hoel must show that Officer Carter "observed or had reason to know that excessive force would be or was being used." *Hollingsworth v. City of St. Ann*, 800 F.3d 985 (8th Cir. 2015). In addition, Hoel must allege facts showing Officer Carter had an opportunity to intervene and failed to do so. *Krout v. Goemmer*, 583 F.3d 557, 565-66 (8th Cir. 2009).

Hoel fails to plead sufficient facts to state a claim for a failure to intervene. Hoel asserts Officer Carter failed to stop Deputy Prouse's use of force. A conclusory statement simply reciting elements of a claim is not enough. *Twombly*, 550 U.S. at 555. Even if Hoel alleged sufficient facts for an excessive force claim against Deputy Prouse, he alleges no facts demonstrating Officer Carter had an opportunity and time to intervene.

### C. Plaintiff Hoel Does Not Have Standing to Challenge the Search of the Lexus, and the Search Was Supported by Probable Cause

Hoel next challenges the search of the Lexus. *Doc. 1, Count IV*. Since the Lexus was not his vehicle, he does not have standing to challenge the search. *United States v. Barrigan*, 379 F.3d 524, 529-30 (8th Cir. 2004).

Under the Fourth Amendment, searches conducted without a warrant are per se unreasonable, "subject only to a few specifically established and well-delineated exceptions." *United States v. Goodwin-Bey*, 584 F.3d 1117, 1119 (8th Cir. 2009). One of these exceptions "permits the warrantless search or seizure of a vehicle by officers possessing probable cause to do so." *Cronin v. Peterson*, 982 F.3d 1187, 1197 (8th Cir. 2020). *See also United States v. McGhee*, 944 F.3d 740, 742 (8th Cir. 2019) (explaining that the "automobile exception" allows "an officer to legally search a vehicle if he has probable cause"); and *United States v. Grooms*, 602 F.3d 939, 942-43 (8th Cir. 2010) (explaining one of the "well-delineated exceptions [to the Fourth Amendment] is the warrantless search of vehicles," which "authorizes a search of any area of the vehicle in which evidence might be found").

"Probable cause exists when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." *United States v. Murillo-Salgado*, 854 F.3d 407, 418 (8th Cir. 2017) (quoting *United States v. Wells*, 347 F.3d 280 (8th Cir. 2003)).

Here, even if Hoel had standing, he would need to prove the absence of probable cause. Hoel is unable to do so. The police reports detail there was a smell of marijuana emanating from the Lexus. The Eighth Circuit has held numerous times observing the smell of marijuana coming from a vehicle during an

13

investigatory stop gives an officer probable cause to search for drugs. *United States v. Smith*, 789 F.3d 923, 928-29 (8th Cir. 2015) (summarizing cases). Additionally, because there was an active investigation into potentially stolen registration stickers and violations of court orders, the officers also likely had probable cause to search the Lexus to ensure there were no other potentially stolen registration stickers in the vehicle.

## II.   PLAINTIFF FAILS TO ALLEGE SUFFICIENT FACTS FOR A PLAUSIBLE FIRST AMENDMENT CLAIM

Plaintiff Hoel next alleges retaliation for recording his interaction with Deputy Prouse and Officer Carter. To assert a First Amendment retaliation claim, Hoel needs to show protected activity, adverse action, and causation—specifically: (1) that they engaged in activity protected by the First Amendment; (2) that the defendant took action against them that was sufficiently serious to chill a person of ordinary firmness from engaging in protected activity; and (3) that the defendant took the adverse action in retaliation for the protected activity. *See Zutz v. Nelson*, 601 F.3d 842, 848–49 (8th Cir. 2010). The defendant's retaliatory motive must be a but-for cause of the retaliation; a plaintiff cannot recover if the defendant would have taken the same adverse action even in the absence of the improper motive. *Osborne v. Grussing*, 477 F.3d 1002, 1006 (8th Cir. 2007).

Here, Hoel fails to adequately plead a case of First Amendment retaliation. Hoel likely has the right to record the police. *Gilk v. Cunniffe*, 655 F.3d 78, 82 (1st

Cir. 2011) (recognizing videotaping public officials is an exercise of First Amendment liberties) (citing cases). "It is true that the First, Third, Fifth, Seventh, Ninth, and Eleventh Circuits have all held that the First Amendment protects the act of photographing, filming, or otherwise recording police officers conducting their official duties in public." *Sandberg v. Englewood, Co.*, 727 Fed. App'x 950, 963 (10th Cir. 2018) (citing cases). Deputy Prouse and Officer Carter, however, committed no action which would chill a person of ordinary firmness from engaging in protected activity. The officers used a reasonable amount of force to handcuff Hoel, as he was uncooperative and belligerent. The officers needed to identify Hoel to ensure he was not involved in violating a court order; the officers needed an identity to continue their investigation. Hoel's recording had nothing to do with the underlying investigation. Hoel also fails to adequately allege but-for causation. Hoel fails to draw a causal link between his recording and his alleged harms. Because Hoel fails to state a First Amendment retaliation claim, this claim should be dismissed.

### III. HOEL FAILS TO ESTABLISH A CIVIL RIGHTS CONSPIRACY CLAIM

#### A. Hoel Fails to Establish a Civil Rights Conspiracy Claim under § 1985

Hoel also brings a Civil Rights Conspiracy claim. *Compl.*, *Count V*. In order to prove the existence of a civil rights conspiracy under § 1985(3), Hoel must prove: (1) that the defendants did "conspire," (2) "for the purpose of depriving, either

directly or indirectly, any person or class of persons of equal protection of the laws, or equal privileges and immunities under the laws," (3) that one or more of the conspirators did, or caused to be done, "any act in furtherance of the object of the conspiracy," and (4) that another person was "injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States." 42 U.S.C. § 1985(3); *see also City of Omaha Emps. Betterment Ass'n v. City of Omaha*, 883 F.2d 650 (8th Cir. 1989).

    The "purpose" element of the conspiracy requires that the plaintiff prove a class-based "invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88 (1971). Moreover, the plaintiff must allege with particularity and specifically demonstrate with material facts that the defendants reached an agreement. *Gometz v. Culwell*, 850 F.2d 461, 464 (8th Cir. 1988). "[Hoel] can satisfy this burden by 'point[ing] to at least some facts which would suggest that [the officers] reached an understanding' to violate [his] rights." *Nelson v. City of McGehee*, 876 F.2d 56, 59 (8th Cir. 1989) (quoting *Myers v. Morris*, 810 F.2d 1437, 1454 (8th Cir. 1987)).

    Hoel does not adequately plead a § 1985 Civil Rights Conspiracy claim. Hoel alleges no facts which establish the officers conspired to violate any civil rights. Hoel does not allege facts with particularity or specifically demonstrate with material facts that the officers ever reached an agreement. Hoel again solely writes conclusory statements without detailed facts. Hoel clearly fails to establish a class-

16

based invidiously discriminatory animus, and therefore this claim must be dismissed.

### B. Without a Meritorious § 1985 Claim, There is No Successful § 1986 Claim

Hoel also brings a Failure to Prevent Civil Rights Violations under § 1986. *Compl., Count VI.* "In order to state a claim for a § 1986 violation, Plaintiff must first state a claim for a § 1985 violation." *Kaminsky v. Missouri*, No. 4:07–CV–1213, 2007 WL 2994299, at *6, (E.D.Mo. Oct. 11, 2007)(citing *McIntosh v. Ark. Republican Party–Frank White Election Comm.*, 766 F.2d 337, 340 (8th Cir. 1985)); *Barstad v. Murray Cnty.*, 420 F.3d 880, 887 (8th Cir. 2005)(a § 1986 claim must be predicated upon a valid § 1985 claim); *Jensen v. Henderson*, 315 F.3d 854 (8th Cir. 2002)(same).

In order to bring a § 1986 claim for failure to prevent a conspiracy to interfere with civil rights, a plaintiff must show that (1) the defendants had actual knowledge of a § 1985 conspiracy, (2) the defendants had the power to prevent or aid in preventing the commission of the § 1985 conspiracy, (3) the defendants neglected or refused to prevent the conspiracy, and (4) a wrongful act was committed. *Brandon v. Lotter*, 157 F.3d 537, 539 (8th Cir. 1998).

Because Hoel fails to establish a §1985 violation, there can be no §1986 liability. This claim therefore must be dismissed.

## IV. PLAINTIFF HOEL FAILS TO ESTABLISH A *MONELL* CLAIM

The City of Proctor is entitled to dismissal of Plaintiff Hoel's *Monell* claim against it because Hoel did not allege sufficient facts showing an unconstitutional policy or custom that caused the misconduct.

To prevail on a claim against a municipality under § 1983 based on acts of a public official, the plaintiff is required to prove: (1) actions taken under color of law; (2) deprivation of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690-91 (1978). Those employees must be implementing an unconstitutional policy or custom, and that policy or custom must be the "moving force behind the constitutional violation." *Id*. "In other words, a municipality may not be found liable simply because one of its employees committed a tort." *Bd. of County Comm'rs. v. Brown*, 520 U.S. 397, 405 (1997). There is no vicarious liability under Section 1983. *Monell*, 436 U.S. at 691.

Here, Hoel alleges no facts which assert a meritorious *Monell* claim. Hoel simply writes conclusory statements detailing how a *Monell* claim functions, as opposed to asserting facts which make out a deprivation. Indeed, Hoel makes general claims about the City of Proctor's responsibility for violations without detailing specifically what the City of Proctor failed to do.

18

Hoel's Complaint does not identify any custom or policy for the City of Proctor which caused his alleged constitutional violation. The Complaint merely describes a single incident of alleged unconstitutional conduct. An isolated incident cannot, as a matter of law, establish a persistent widespread pattern of unconstitutional misconduct necessary to state a *Monell* claim. *Thelma D. Ex. Rel. Delores A. v. Board of Education*, 934 F.2d 929, 933 (8th Cir. 1991). Because the Complaint fails to allege facts necessary to establish a municipal pattern or custom, this claim should be dismissed.

## V.   PLAINTIFF HOEL'S IIED CLAIM IS TIME BARRED AND MUST BE DISMISSED

Hoel asserts an IIED claim against Officer Carter. Hoel's Intentional Infliction of Emotional Distress ("IIED") claim is barred by the statute of limitations and must be dismissed.

Hoel's intentional infliction of emotional distress claim is time barred under Minn. Stat. § 541.07(1). Under Minnesota law, IIED claims accrue on the date of the tortious act. *See Krause v. Farber*, 379 N.W.2d 93, 97 (Minn. Ct. App. 1985) (the statute of limitations for intentional infliction of emotional distress begins to run "on the date of the tortious act"). The alleged tortious act occurred in March of 2022. This case was filed in June of 2025, more than two years since the claim accrued. Accordingly, Hoel's IIED claim is barred by a two-year statute of limitations.

## **CONCLUSION**

For the foregoing reasons, Defendants City of Proctor and Officer Joseph Carter respectfully request this Court dismiss Robert Brooks Hoel's claims against them, together with costs and disbursements.

Dated: July 23, 2025

s/Carlos Soto-Quezada
Stephanie A. Angolkar #388336
Carlos Soto-Quezada #505571
IVERSON REUVERS
9321 Ensign Avenue South
Bloomington, MN 55438
(952) 548-7200
stephanie@iversonlaw.com
carlos@iversonlaw.com

*Attorneys for the City of Proctor and Officer Joseph Carter*