UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Robert Brooks Hoel,                                        File No. 25-cv-2342 (ECT/LIB)

      Plaintiff,

v.                                                         **OPINION AND ORDER**

Alexander Prouse, *Deputy – ID #5368 – sued in both his individual and official capacities*; Joseph Carter, *Officer – ID #121 – sued in both his individual and official capacities*; Doe 1; City of Proctor; St. Louis County,

      Defendants.

---

Robert Brooks Hoel, Pro Se.

Nathan N. LaCoursiere, St. Louis County Attorney's Office, Duluth, MN, for Defendants Alexander Prouse and St. Louis County.

Stephani A. Angolkar and Carlos B. Soto-Quezada, Iverson Reuvers, Bloomington, MN, for Defendants Joseph Carter and City of Proctor.

---

      Pro se Plaintiff Robert Brooks Hoel claims that three officers violated his constitutional rights and committed state-law torts when they seized him and damaged some of his personal belongings, and he claims the officers' municipal employers share liability for the officers' conduct. Defendants seek the case's dismissal, two of them under Federal Rule of Civil Procedure 12(b)(6) and two under Rule 12(c). They argue that qualified immunity bars Mr. Hoel's constitutional claims against the individual officer Defendants and that the Complaint identifies no basis for the municipal Defendants'

liability. They argue the state tort claims are dismissal-worthy for different reasons. The motions will be granted in most respects, but not entirely.

*The basic standards governing Defendants' Rule 12(b)(6) and 12(c) motions.* In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept a complaint's well-pleaded factual allegations as true and draw all reasonable inferences in the plaintiff's favor. *Gorog v. Best Buy Co.*, 760 F.3d 787, 792 (8th Cir. 2014). Although the factual allegations need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The complaint must "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* A Rule 12(c) motion for judgment on the pleadings is assessed under the same standard as a Rule 12(b)(6) motion to dismiss. *Ashley County v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009).

*The pro se plaintiff "liberal construction" rule.* Because he is pro se, Mr. Hoel's Complaint is entitled to liberal construction. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). "[H]owever inartfully pleaded," pro se complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Jackson v. Nixon*, 747 F.3d 537, 541 (8th Cir. 2014) (quoting *Erickson*, 551 U.S. at 94). "[I]f the essence of an allegation is discernible . . . then the district court should construe the complaint in a way that permits the

layperson's claim to be considered within the proper legal framework." *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015) (quoting *Stone v. Harry*, 364 F.3d 912, 915 (8th Cir. 2004)). The liberal-construction rule does not excuse a pro se plaintiff from alleging sufficient facts to support the claims he advances. *Stone*, 364 F.3d at 914. And notwithstanding the liberal-construction rule, "pro se litigants are not excused from failing to comply with substantive and procedural law." *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984); *see Sorenson v. Minn. Dep't of Corr.*, No. 12-cv-1336 (ADM/AJB), 2012 WL 3143927, at *2 (D. Minn. Aug. 2, 2012).

*The question of whether facts beyond the Complaint may be considered.* In adjudicating motions under Rules 12(b)(6) and 12(c), "courts are not strictly limited to the four corners of complaints," but may consider other matters, including "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned[] without converting the motion into one for summary judgment." *Dittmer Props., L.P. v. FDIC*, 708 F.3d 1011, 1021 (8th Cir. 2013) (quotations omitted); *see Zean v. Fairview Health Servs.*, 858 F.3d 520, 526–27 (8th Cir. 2017) (explaining that consideration of matters outside the pleadings or evidence in opposition to the pleadings generally converts a Rule 12(b)(6) motion into one for summary judgment). Here, Mr. Hoel attached three exhibits to his Complaint, including a police report of the suit-prompting incident. ECF No. 1-1 at 1–13. To support their motions, Defendants rely on facts described in the police report and imply that those facts may be accepted as true. *See* ECF No. 18 at 2–4, 8, 11–15. This is not correct. The

3

Complaint nowhere says or implies that it incorporates the police report, or any facts described in it. And Defendants seek to rely on the police report to establish facts that cut against the Complaint's allegations. For example, Defendants rely on the report to claim that Mr. Hoel was "argumentative and uncooperative." ECF No. 18 at 8. But the Complaint alleges that Mr. Hoel fully complied with officers' commands. Compl. [ECF No. 1] ¶ 17. In other words, incorporating and construing the police records as Defendants ask would violate the fundamental rule that, in the Rule 12(b)(6) and Rule 12(c) context, a complaint's allegations, along with reasonable inferences to be drawn from those allegations, are accepted as true. *See LeMay v. Mays*, 18 F.4th 283, 288–89 (8th Cir. 2021) (refusing to accept the movant's characterizations of evidence at the motion-to-dismiss stage); *see also Abdullah v. Lepinski*, No. 23-cv-121 (ECT/DTS), 2023 WL 5515895, at *1 (D. Minn. Aug. 25, 2023) (declining to accept facts described in police report as true at the motion-to-dismiss stage). For these reasons, Defendants' motions will be adjudicated based on the Complaint's allegations and nothing more.

*The Complaint's factual allegations.* On March 10, 2022, at around 10:30 p.m., Mr. Hoel "was lawfully present at a public well in Midway Township, Minnesota, filling water jugs." Compl. ¶ 13. St. Louis County Sheriff's Deputy Alexander Prouse approached Mr. Hoel and demanded he provide identification. *Id.* ¶ 14. It was "freezing cold" and Mr. Hoel told the officer "he did not wish to speak further because he had to warm up." *Id.* Mr. Hoel entered a vehicle to warm up and began to record his interaction with the officers "using his phone." *Id.* ¶ 15. Deputy Prouse and Officer Joseph Carter with the City of Proctor Police Department opened the car door "without any lawful cause

4

and forcibly removed" Mr. Hoel, "throwing his spiritual tobacco bag and ceremonial supplies—items of personal and religious significance—to the ground." *Id.* ¶ 16. Though Mr. Hoel gave the officers his "full compliance," the officers "threw [Mr. Hoel] against the vehicle, causing him physical pain and resulting in the destruction of [his] tobacco and rolling machine, which were stepped on during the incident." *Id.* ¶ 17. The officers also "seized [Mr. Hoel's] phone and stopped the recording." *Id.* ¶ 18. Mr. Hoel was "handcuffed and detained in another vehicle without any lawful justification." *Id.* ¶ 20. "Defendant Doe 1 arrived and assisted in conducting a warrantless search of [Mr. Hoel's] vehicle." *Id.* ¶ 22. Mr. Hoel received a citation for misdemeanor obstruction of justice in violation of Minn. Stat. § 609.50, subdiv. 1(1), though this charge was "removed from all records without explanation." *Id.* ¶ 23; *see* ECF 1-1 at 6. "Defendant Prouse left the scene with [Mr. Hoel's] phones in his car, returning later with one phone visibly damaged (screen shattered, casing cracked), and the second phone missing entirely." Compl. ¶ 24.

*The claims and requested relief.* Mr. Hoel asserts ten claims: (1) Through 42 U.S.C. § 1983, Mr. Hoel claims his seizure and arrest violated the Fourth Amendment because the officers lacked any justification to detain him. (2) Through § 1983, Mr. Hoel claims his seizure and arrest violated the Fourth Amendment because the officers subjected him to excessive force. (3) Through § 1983, Mr. Hoel claims his arrest and the "deactivation of [his] recording device"—his cellular telephone—violated the First Amendment because they occurred in retaliation for his exercise of First Amendment-protected activities. (4) Through § 1983, Mr. Hoel claims his property was searched in violation of the Fourth Amendment and destroyed in violation of the Fourteenth

5

Amendment. (5) Mr. Hoel claims Defendants conspired to violate his civil rights in violation of 42 U.S.C. § 1985(3). (6) Mr. Hoel claims that Officer Carter and officer "Doe 1" failed to prevent civil-rights infractions in violation of 42 U.S.C. § 1986. (7) Mr. Hoel claims the municipal Defendants are liable for the officers' constitutional violations under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). (8) Mr. Hoel claims Deputy Prouse committed the Minnesota tort of conversion. (9) Mr. Hoel claims Deputy Prouse and Officer Carter's actions amounted to intentional infliction of emotional distress under Minnesota law. (10) Mr. Hoel claims Deputy Prouse's decision to charge him with misdemeanor obstruction of justice amounted to malicious prosecution under Minnesota law. Compl. at 3–4. For relief, Mr. Hoel seeks compensatory and punitive damages, a declaratory judgment that his "rights were violated," "[a]n order requiring return of, or compensation for, [Mr. Hoel's] property," costs and reasonable attorney's fees, injunctive relief that would require the municipal Defendants "to implement constitutional training, proper supervisory oversight, and disciplinary measures for officers who violate civil rights," and "[a]ny other relief the Court deems just and proper." *Id.* at 4.

*The rules for applying qualified immunity at the motion-to-dismiss stage.* Before considering Mr. Hoel's § 1983/constitutional claims and Defendants' assertion of qualified immunity with respect to these claims, it seems important to clarify the controlling analytical framework. The United States Supreme Court and our Eighth Circuit Court of Appeals "repeatedly have stressed the importance of resolving [qualified] immunity questions at the earliest possible stage in litigation." *Payne v. Britten*, 749 F.3d

697, 701 (8th Cir. 2014) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)). Often, § 1983 defendants will assert qualified immunity at the motion-to-dismiss stage by relying on extra-complaint materials that properly may be considered. *See, e.g.*, *Wells v. Hanneman*, No. 23-cv-273 (ECT/DLM), 2024 WL 3326070, at *2 (D. Minn. July 8, 2024) (noting that defendants relied on videos recorded by officers' body-worn cameras to show qualified immunity), *appeal dismissed*, 144 F.4th 1015 (8th Cir. 2025). At times, however, the assertion of qualified immunity will rely on just the complaint's allegations. Here, my decision that the police reports cannot be considered (because they contradict the Complaint's allegations in material respects) means we have this type of challenge. Defendants, in other words, are left to rely on just the Complaint to show qualified immunity. In this situation, a court is to "ask only whether the facts as alleged plausibly state a claim and whether that claim asserts a violation of a clearly established right," *Payne*, 749 F.3d at 702, or put it another way, "whether immunity is established on the face of the complaint," *Schatz Fam. ex rel. Schatz v. Gierer*, 346 F.3d 1157, 1159 (8th Cir. 2003). *See Elder v. Gillespie*, 54 F.4th 1055, 1062 (8th Cir. 2022); *Stanley v. Finnegan*, 899 F.3d 623, 627 (8th Cir. 2018); *see also Watkins v. City of St. Louis*, 102 F.4th 947, 951 (8th Cir. 2024) ("To overcome qualified immunity at the motion to dismiss stage, a plaintiff must plead facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." (quotation omitted)).

*The § 1983/Fourth Amendment unlawful seizure/arrest claim.* Mr. Hoel claims the officers lacked a constitutional justification to detain him, whether the detention was an

7

arrest or something short of that. The Fourth Amendment protects "the right of the people to be secure . . . against unreasonable searches and seizures." U.S. Const. amend. IV. "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001). Short of an arrest, "[a]n officer can 'conduct a brief, investigatory stop'—what we call a '*Terry* stop'—'when the officer has a reasonable, articulable suspicion that criminal activity is afoot.'" *Haynes v. Minnehan*, 14 F.4th 830, 835 (8th Cir. 2021) (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000)); *see Terry v. Ohio*, 392 U.S. 1, 19–20 (1968). The Complaint describes a straightforward sequence of events preceding Mr. Hoel's detention: Mr. Hoel was "lawfully present at a public well . . . filling water jugs," Deputy Prouse asked Mr. Hoel to produce identification, Mr. Hoel refused and returned to a vehicle, and Deputy Prouse and Officer Carter removed him from the vehicle and detained him. Compl. ¶¶ 13–14, 16–17. Accepted as true, these allegations plausibly show the officers lacked any justification to detain Mr. Hoel. The well was public, meaning Mr. Hoel's use of it would have given an officer no reason to suspect criminal activity was afoot. In another context, Mr. Hoel's refusal to provide identification might have itself given the officers probable cause to arrest him.[1] Here, Defendants have not cited—and independent

---

[1] In March 2022 (and still today), a motorist's refusals to produce his license was punishable as a misdemeanor under Minnesota law. Minn. Stat. §§ 171.08, 171.241. Had Mr. Hoel been driving, his refusal to produce his license would have given the officers probable cause to think he violated these statutes and arrest him. Minn. Stat. § 629.34, subdiv. 1(c)(1) (authorizing peace officer to make a warrantless arrest "when a public

research has not located—a Minnesota law generally criminalizing a citizen's refusal to produce identification in response to an officer's request. The Fourth Amendment rules governing arrests and investigative stops are clearly established at a high level. *See Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (recognizing that, "in an obvious case," Fourth Amendment standards can clearly establish the answer, even at a high level of generality). Because the Complaint alleges no facts that might conceivably have justified Mr. Hoel's detention or arrest, qualified immunity does not warrant this claim's dismissal at this early stage.

*The § 1983/Fourth Amendment excessive-force claim.* "To establish a constitutional violation under the Fourth Amendment's right to be free from excessive force, the test is whether the amount of force used was objectively reasonable under the particular circumstances." *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009) (quotation omitted). Under that standard, a court must evaluate all of the facts and circumstances surrounding the use of force, "careful[ly] balancing . . . the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396

---

offense has been committed or attempted in the officer's presence"); *see Johnson v. Morris*, 453 N.W.2d 31, 36 (Minn. 1990) ("'Public offense' includes both misdemeanors and felonies, and need not involve a breach of peace." (quoting *Smith v. Hubbard*, 91 N.W.2d 756, 761 (Minn. 1958))); *see Spottswood v. Washington County*, No. 19-cv-1331 (MJD/ECW), 2022 WL 707202, at *8 (D. Minn. Jan. 20, 2022) (reading Minn. Stat. § 629.34, subdiv. 1(c) to mean that "a party can be arrested even for a misdemeanor when it is committed in the presence of an officer"), *R. & R. adopted*, 2022 WL 706846 (D. Minn. Mar. 9, 2022). The Complaint's allegations give no indication that Mr. Hoel was operating the vehicle when the suit-prompting events occurred.

(1989) (citation modified). In evaluating the reasonableness of an officer's use of force in an arrest, courts consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether [the suspect] is actively resisting arrest or attempting to evade arrest by flight." *Id.* "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97; *see City of Golden Valley*, 574 F.3d at 496. On this claim, the Complaint's allegations are sparse but sufficient. Mr. Hoel alleges the officers "forcibly removed" him from the vehicle "without any lawful cause" and that they "threw [him] against the vehicle, causing [him] physical pain," even though he was in "full compliance" with their commands. Compl. ¶¶ 16–17. Again, accepting its factual allegations as true, the Complaint gives no reason to think the officers had reason to use any force on Mr. Hoel because he had done nothing to arouse reasonable suspicion and had complied with the officers' instructions. The relevant rules are clearly established. The Eighth Circuit has "held time and again that, if a person is not suspected of a serious crime, is not threatening anyone, and is neither fleeing nor resisting arrest, then it is unreasonable for an officer to use more than *de minimis* force against [the person]." *Watkins*, 102 F.4th at 952 (quoting *Mitchell v. Kirchmeier*, 28 F.4th 888, 898 (8th Cir. 2022)). Because the Complaint alleges no facts that might conceivably have justified the use of any force against Mr. Hoel, qualified immunity does not warrant this claim's dismissal.

*The § 1983/First Amendment retaliation claim.* To state a First Amendment-retaliation claim under § 1983, a plaintiff must allege that: "(1) he engaged in a protected activity, (2) the government official[s] took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Bennie v. Munn*, 822 F.3d 392, 397 (8th Cir. 2016) (quotation omitted). "To prevail on causation at the motion-to-dismiss stage, a plaintiff must plausibly allege a causal connection between the government defendant's retaliatory animus and the plaintiff's subsequent injury." *Wagner v. Scheirer*, No. 24-1312, 2025 WL 502139, at *4 (8th Cir. Feb. 14, 2025) (citation modified). The protected activity "must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." *Nieves v. Bartlett*, 587 U.S. 391, 399 (2019). Here, Mr. Hoel's theory seems to be that the officers retaliated against him for recording their activities, but the Complaint does not identify which adverse actions are associated with this claim—that is, which actions allegedly were taken because Mr. Hoel engaged in his recording activity. One or more of several actions ranging from his detention to the decision to charge him might conceivably be at issue, but the Complaint does not say. The Complaint also is silent about causation. It includes no allegations tethering a retaliatory motive to an adverse action. For these reasons, the claim will be dismissed.

*The § 1983 illegal-search and property-destruction claim under the Fourth and Fourteenth Amendments.* Notwithstanding the Complaint's reference to the Fourteenth Amendment, this claim arises under the Fourth Amendment. *See Cook v. Gibbons*, 308

F. App'x 24, 31–32 (8th Cir. 2009) (per curiam); *see Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available."). The claim is not plausibly alleged. The only "search" the Complaint identifies specifically is a post-detention "search of Plaintiff's vehicle." Compl. ¶ 22. But the Complaint alleges no facts showing how this search was conducted or why it might have violated the Fourth Amendment. Nor does the Complaint identify what property might have been damaged or destroyed as part of the vehicle search, much less why that property damage or destruction might have violated the Fourth Amendment. It is true the Complaint alleges that several items belonging to Mr. Hoel were damaged during his encounter with the officers. These items were not damaged as part of the vehicle search, however, and the Complaint does not connect the claim to any other search or searches. If the Complaint intended to connect this claim to a search of Mr. Hoel's person, the Complaint alleges no facts describing each officers' actions in damaging Mr. Hoel's property. This claim will be dismissed.

*The civil-rights conspiracy claim under 42 U.S.C. § 1985(3).* To assert a claim under § 1985(3), a plaintiff must allege facts plausibly showing:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

12

*United Bhd. of Carpenters & Joiners of Am., Loc. 610 v. Scott*, 463 U.S. 825, 828–29 (1983). A claim under § 1985(3) "requires proof of a class-based animus." *Federer v. Gephardt*, 363 F.3d 754, 758 (8th Cir. 2004) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)). The Complaint does not address at least two of these essential elements. It alleges no facts plausibly showing that two or more Defendants conspired, and it alleges no facts plausibly showing class-based animus. These pleading failures require the claim's dismissal.

*The failure-to-prevent-civil-rights-violations claim under 42 U.S.C. § 1986.* "An actionable conspiracy under § 1985 is a prerequisite to a claim under § 1986 for neglect to prevent a civil rights conspiracy." *Carter v. Wasko*, No. 4:22-CV-04103-RAL, 2024 WL 3522017, at *5 (D.S.D. July 24, 2024) (citing *Barstad v. Murray County*, 420 F.3d 880, 887 (8th Cir. 2005)); *see Jensen v. Henderson*, 315 F.3d 854, 863 (8th Cir. 2002) (recognizing that a § 1986 claim is "dependent upon a valid § 1985 claim"). The Complaint's failure to plead a plausible § 1985 claim thus requires dismissal of the § 1986 claim.

*The Monell/municipal-liability § 1983 claim.* *Monell*'s basic rule is "that civil rights plaintiffs suing a municipal entity under 42 U.S.C. § 1983 must show that their injury was caused by a municipal policy or custom." *Los Angeles County v. Humphries*, 562 U.S. 29, 30–31 (2010). In other words, a municipality cannot be held liable under § 1983 because it employed a tortfeasor, but it may "be sued directly under § 1983 for monetary, declaratory, or injunctive relief . . . [only if] the action that is

13

alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 690. Municipalities also "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Id.* at 690–91. Here, the Complaint alleges only that St. Louis County and the City of Proctor "fail[ed] to train, supervise, and discipline" their officers regarding "unlawful seizure, use of force, and retaliation for constitutionally protected activity." Compl. at 4. These are legal conclusions. They do not plausibly show "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton v. Harris*, 489 U.S. 378, 385 (1989).

*The conversion claim under Minnesota law.* Under Minnesota law, "[t]he elements of common law conversion are (1) the plaintiff has a property interest and (2) the defendant deprives the plaintiff of that interest." *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 986 (8th Cir. 2008) (quoting *Olson v. Moorhead Country Club*, 568 N.W.2d 871, 872 (Minn. Ct. App. 1997)); *see DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997) (defining conversion "as an act of willful interference with personal property, 'done without lawful justification by which any person entitled thereto is deprived of use and possession'" (quoting *Larson v. Archer-Daniels-Midland Co.*, 32 N.W.2d 649, 650 (Minn. 1948))). Conversion requires "an execution of dominion over the goods which is inconsistent with and in repudiation of the owner's right to the goods or some act done which destroys or changes their character or deprives the owner of possession permanently

14

or for an indefinite length of time." *Bloomquist v. First Nat'l Bank of Elk River*, 378 N.W.2d 81, 86 (Minn. Ct. App. 1985) (quoting *Hildegarde, Inc. v. Wright*, 70 N.W.2d 257, 259 (Minn. 1955)). Here, the Complaint alleges only that Deputy Prouse "left the scene with Plaintiff's phones in his car, returning later with one phone visibly damaged (screen shattered, casing cracked) and the second phone missing entirely." Compl. ¶ 24. This single sentence says little, but considering how the issue has been presented, it's enough. The sentence plausibly shows the phones belonged to Mr. Hoel, that Deputy Prouse deprived Mr. Hoel of his interest in the phones, that the deprivation with respect to one phone was permanent in the sense it was never returned, that the deprivation with respect to the other phone was permanent in the sense that its screen was "shattered," and it seems reasonable to infer from the Complaint's allegations regarding the suit-prompting events that Deputy Prouse had no legal justification to confiscate the phones. Importantly, Deputy Prouse did not argue this claim should be dismissed on its merits. He argued only, assuming the federal claims' dismissal, the court should decline to exercise supplemental jurisdiction over the claim. *See* ECF No. 23 at 4–5. For these reasons, this claim will not be dismissed.

*The intentional-infliction-of-emotional-distress claim under Minnesota law.* Defendants argue that the applicable statute of limitations bars this claim. A statute of limitations "is an affirmative defense that defendants bear the burden to plead and prove." *Roiger v. Veterans Affs. Health Care Sys.*, No. 18-cv-591 (ECT/TNL), 2019 WL 572655, at *7 (D. Minn. Feb. 12, 2019) (citing *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 133 (2008)). It is therefore "not ordinarily a ground for Rule 12(b)(6)

dismissal unless the complaint itself establishes the defense." *Jessie v. Potter*, 516 F.3d 709, 713 n.2 (8th Cir. 2008); *see Varner v. Peterson Farms*, 371 F.3d 1011, 1016 (8th Cir. 2004) (recognizing that, when a defendant raises a statute-of-limitations defense on a motion to dismiss, the motion should be granted when it "appears from the face of the complaint itself that the limitation period has run" (quotation omitted)). This means that the plaintiff's own allegations must "clearly indicate[]" that the claims are untimely. 5B Charles Alan Wright, Arthur R. Miller & A. Benjamin Spencer, *Federal Practice and Procedure* § 1357 (4th ed. Sep. 2025 Update). If the complaint "reasonably may be understood to assert a claim for relief plausibly within the limitations period," it survives. *Int'l Decision Sys., Inc. v. JDR Sols., Inc.*, No. 18-cv-2951 (ECT/DTS), 2019 WL 2009249, at *3 (D. Minn. May 7, 2019). Here, the Complaint clearly indicates that Mr. Hoel's intentional-infliction-of-emotional-distress claim is untimely. This claim is subject to a two-year statute of limitations. *See Rassier v. Sanner*, 996 F.3d 832, 836 (8th Cir. 2021) (citing Minn. Stat. § 541.07(1)). This period accrues "on the date of the tortious act." *Id.* at 838 (citing *Krause v. Farber*, 379 N.W.2d 93, 97 (Minn. Ct. App. 1985)). The Complaint alleges the tortious acts occurred "March 10, 2022." Compl. ¶ 13. Mr. Hoel brought this case on June 4, 2025, more than fourteen months past the March 2024 expiration of this limitations period, and the Complaint alleges no basis to toll the period. Because it is barred by the applicable limitations period, this claim will be dismissed.

16

*The malicious-prosecution claim under Minnesota law.* The law governing the merits of Mr. Hoel's malicious-prosecution claim seems clear enough:

> To state a malicious-prosecution claim in Minnesota, a party must allege that "(1) the suit [was] brought without probable cause and with no reasonable ground on which to base a belief that the plaintiff would prevail on the merits; (2) the suit [was] instituted and prosecuted with malicious intent; and (3) the suit . . . ultimately terminate[d] in favor of the defendant." *Stead-Bowers v. Langley*, 636 N.W.2d 334, 338 (Minn. Ct. App. 2001). "Probable cause is a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged." *Allen v. Osco Drug, Inc.*, 265 N.W.2d 639, 643 (Minn. 1978) (internal quotation marks omitted). "Only reasonable belief that probable cause existed is necessary to negate a malicious prosecution claim." *Dunham v. Roer*, 708 N.W.2d 552, 569 (Minn. Ct. App. 2006) (internal quotation marks omitted).

*Nygard v. City of Orono*, 39 F.4th 514, 521 (8th Cir. 2022). "Malice," for malicious-prosecution's purposes, is "the intentional doing of a wrongful act without legal justification or excuse, or, otherwise stated, the willful violation of a known right." *Rico v. State*, 472 N.W.2d 100, 107 (Minn. 1991) (quotation omitted). A malicious-prosecution "plaintiff must prove, at a minimum, that the defendant knew that its actions were wrong." *Hirtzinger v. Pinnacle Airlines, Inc.*, No. 06-cv-1609 (PJS/RLE), 2008 WL 835644, at *16 (D. Minn. Mar. 27, 2008) (citing *Osco Drug, Inc.*, 265 N.W.2d at 646). With respect to this claim, the Complaint alleges that Mr. Hoel fully complied with the officer's commands, that he was nonetheless charged with misdemeanor obstruction, and that prosecutors dismissed the charge without explanation. Compl. ¶¶ 17, 23; *see* ECF No. 1-1 at 8. Considering "intent . . . may be alleged generally," Fed. R. Civ. P. 9(b), and

17

that Deputy Prouse did not address this claim's merits in his motion, the better answer is not to dismiss it.

*The with- or without-prejudice question.* The question is whether the dismissed claims should be dismissed with or without prejudice. Courts ultimately have discretion to decide between a with-prejudice and without-prejudice dismissal. *Paisley Park Enters. v. Boxill*, 361 F. Supp. 3d 869, 880 n.7 (D. Minn. 2019). A dismissal with prejudice is typically appropriate when a plaintiff has shown "persistent pleading failures" despite one or more opportunities to amend, *Milliman v. County of Stearns*, No. 13-cv-136 (DWF/LIB), 2013 WL 5426049, at *16 (D. Minn. Sep. 26, 2013); *see Reinholdson v. Minnesota*, 01-cv-1650 (RHK/JMM), 2002 WL 32658480, at *5 (D. Minn. Nov. 21, 2002) (adopting R. & R.), or when the record makes clear that any amendment would be futile, *Paisley Park*, 361 F. Supp. 3d at 880 n.7. On the other hand, when a plaintiff's claim "might conceivably be repleaded with success," dismissal without prejudice may be justified. *Washington v. Craane*, No. 18-cv-1464 (DWF/TNL), 2019 WL 2147062, at *5 (D. Minn. Apr. 18, 2019), *R. & R. adopted*, 2019 WL 2142499 (D. Minn. May 16, 2019). Here, the dismissed claims fall in the latter category. This means Mr. Hoel will have the chance to seek leave to file an amended pleading that addresses the problems identified here.

# ORDER

Therefore, based on the foregoing, and on all the files, records, and proceedings herein, **IT IS ORDERED THAT**:

1. The Motion to Dismiss of Defendants City of Proctor and Officer Joseph Carter [ECF No. 15] is **GRANTED IN PART** and **DENIED IN PART**. Counts III, IV, V, VI, VII, and IX are **DISMISSED WITHOUT PREJUDICE**. The Motion is in all other respects **DENIED**.

2. The Motion for Judgment on the Pleadings of Defendants St. Louis County and Deputy Alexander Prouse [ECF No. 21] is **GRANTED IN PART** and **DENIED IN PART**. Counts III, IV, V, VI, VII, and IX are **DISMISSED WITHOUT PREJUDICE**. The Motion is in all other respects **DENIED**.

Dated:  October 30, 2025                                         s/ Eric C. Tostrud
                                                                 Eric C. Tostrud
                                                                 United States District Court