**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**Robert Brooks Hoel,**
Plaintiff,

v.

Alexander Prouse; Joseph Carter; Doe #1; St. Louis County; and City of Proctor,
Defendants.

**Case No. 0:25-cv-02342-ECT-LIB (ECT/LIB)**

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL**

## INTRODUCTION

This is a Rule 34 completion motion. Plaintiff served 33 targeted Requests for Production on May 21, 2026. Many requests intentionally overlap because a single event can generate different records: the conduct record, policy or training record, supervisory-review record, evidence-retention record, system audit, and records identifying the people who acted or reviewed. The motion groups related requests for readability but does not abandon an unresolved request merely because another RFP overlaps.

The County Defendants answered on June 22 and produced approximately 1,000 pages beginning June 23. Plaintiff then sent a 102-page, request-by-request deficiency notice on June 24. That document is filed in full as Exhibit C. It identifies each request, the County response, what Plaintiff could not locate, and the supplementation or clarification requested. County counsel later disclosed on August 7 that two March 10 squad-camera recordings had existed - one for Prouse and one for Deputy Wyatt Phaneuf - and that both were deleted in March 2025. Plaintiff narrowed the remaining issues on August 9; the County supplemented two subjects on August 14; and Plaintiff sent a final Rule 37 letter on August 23 crediting the supplementation and identifying the remaining deficiencies.

On August 27, after reviewing the August 23 letter, County counsel stated that "we have produced everything we have" concerning the incident and resulting criminal case and that there was "nothing more for us to give." As to remaining non-incident subjects, counsel identified

Bates ranges for retention, other incidents, policies, and agreements and stated that the County was "sticking with the relevance and proportionality objections" in its initial responses. Hoel Decl. Ex. I. That position crystallizes the motion. For some RFPs the dispute is whether a promised production is actually complete; for others the County expressly acknowledges withholding responsive material under an objection.

Plaintiff does not ask the Court to find that County counsel intentionally concealed records. Nor does Plaintiff seek a sanctions finding, an authenticity ruling, or an order requiring Defendants to create substantive records that never existed. He asks for reasonable searches of identified repositories, production of existing responsive material within Defendants' possession, custody, or control, and definite supplemental responses when the record is nonexistent, lost, held only elsewhere, or withheld.

## BACKGROUND AND DISCOVERY RECORD

On May 21, 2026, Plaintiff served Plaintiff's First Joint Requests for Production on St. Louis County and Alexander Prouse. Hoel Decl. Ex. A. The requests target incident recordings; identity, warrant, force, property, and actor records; the citation and resulting criminal case; policies and actual training; Prouse-specific complaints; comparable obstruction, detention, force, property, evidence, and warrant matters; source incidents; supervisory review; and the identities and operational records of participating personnel.

On June 22, the County Defendants served written responses and objections. Hoel Decl. Ex. B. They promised all responsive material for numerous requests, including RFP Nos. 2-5, 8-13, 16, 21-22, 27, and 31-33. For RFP Nos. 14, 23, 25, and 28, they expressly stated that responsive material was being withheld under relevance or proportionality objections. RFP No. 24 is different: the County objected but stated that responsive material was not being withheld on that objection.

On June 24, Plaintiff sent the detailed deficiency notice now filed as Exhibit C. The document explains at the outset that the County had produced a combined set without identifying which Bates-numbered documents corresponded to individual RFPs, and repeatedly asks whether unlocated categories were produced, did not exist, were maintained by another custodian, or were being withheld. It is not a newly created motion exhibit; it is the contemporaneous Rule 37 record of what Plaintiff told the County two months before this motion.

On August 7, County counsel materially supplemented the record by stating that there had been two squad-camera recordings of the March 10 incident - one for Prouse and one for Phaneuf - and that both were deleted in March 2025. Hoel Decl. Ex. D. The attached audit trails, SLC 985-988, identify Fleet 2 IR evidence records, vehicle/device information, rear mount orientation, recording start and stop events, retention-level changes, queueing, and deletion.

On August 9, Plaintiff sent a focused completion request that expressly stated it was not serving new RFPs. Hoel Decl. Ex. E. On August 12, County counsel agreed to look further only for squad-camera retention material and police reports for source incidents listed at SLC 326, and otherwise stood on the June 22 responses and August 7 email. Ex. F. On August 14, counsel produced an Axon retention-category document and four source-incident reports and stated that no police reports existed for the remaining listed incidents. Ex. G. Plaintiff credits that supplementation.

On August 23, Plaintiff sent his final Rule 37 letter. Ex. H. It organized the remaining disputes, credited production, asked for categorical no-record answers where appropriate, and proposed conferral. County counsel first advised on August 24 that he had not yet reviewed the letter in detail and then, on August 27, supplied the final substantive position quoted above. Ex. I. Exhibit J accounts for every RFP No. 1 through 33 and identifies the narrowed remaining deficiency and remedy.

## LEGAL STANDARD

Rule 26(b)(1) permits discovery of nonprivileged matter relevant to a party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Rule 34 permits requests for documents and electronically stored information within a party's possession, custody, or control. Fed. R. Civ. P. 34(a).

Rule 34 requires a response to each item that either permits production or states with specificity the grounds for objection. Fed. R. Civ. P. 34(b)(2)(B). An objection must state whether responsive materials are being withheld on the basis of the objection; a partial objection must specify the part objected to and permit production of the rest. Fed. R. Civ. P. 34(b)(2)(C). Documents may be produced as kept in the usual course of business or organized and labeled to correspond to the requests. Fed. R. Civ. P. 34(b)(2)(E)(i).

Rule 26(e)(1) requires timely supplementation when a party learns that a discovery response is materially incomplete or incorrect and the additional information has not otherwise been made known during discovery. If a party contends that a source of electronically stored information is not reasonably accessible because of undue burden or cost, Rule 26(b)(2)(B) places the burden on that party to show the claimed inaccessibility. Plaintiff seeks only reasonable inquiry and reasonably accessible searches, not forensic work without limit.

Rule 37(a)(3)(B)(iv) authorizes a motion to compel when a party fails to produce documents requested under Rule 34, and an evasive or incomplete response is treated as a failure to respond. Fed. R. Civ. P. 37(a)(4). When information is withheld on privilege grounds, Rule 26(b)(5)(A) requires the claim to be expressly made and the nature of the withheld material described sufficiently to permit assessment of the claim.

D. Minn. LR 37.1 requires the discovery motion or memorandum to include the conferral certification, specify the discovery in dispute, provide the request-and-response text (which may

be in an exhibit), concisely state why the response or production is insufficient, and identify and justify the remedy sought. Exhibits A, B, C, H, I, and J supply that record.

## ARGUMENT

### I. RFP NOS. 1, 27, 28, 31, AND 33 - INCIDENT RECORDINGS, FLEET SYSTEMS, AND COUNTY-HOSTED CARTER/PROCTOR RECORDS

RFP No. 1 requested every March 10 recording and associated metadata, activation, deletion, interruption, upload, and custody information. RFP No. 27 separately requested retention, preservation, deletion, export, loss, transfer, and audit history for incident digital evidence. RFP No. 28 requests the governing preservation and deletion materials. RFP No. 31 requests CAD/RMS/event classifications, and RFP No. 33 requests the personnel, squad, unit, CAD/MDT/AVL, and operational records necessary to identify who participated and what systems were used. Exs. A-B; Ex. J.

The August 7 disclosure establishes that Prouse and Phaneuf each had a Fleet recording and that both disclosed evidence records were later deleted. Ex. D. The audits identify rear-oriented Fleet 2 IR evidence records and contain vehicle/device identifiers, recording start and stop events, several retention-level changes, queueing, and final deletion. That supplementation is important, but it does not provide a complete accounting of the channels installed or available on those systems, whether other channels generated evidence records, the full audit/export/preservation history, or reasonably accessible recovery sources. Plaintiff does not ask the Court to infer that a particular front recording necessarily existed. He asks for records sufficient to determine what channels existed, what evidence records were generated, and whether any responsive copy or derivative remains after reasonable search.

The produced interagency materials and Proctor records also make the Carter/S483 search concrete rather than speculative. Exhibit P includes agreements identifying St. Louis County as host of the regional NEMESIS/DAMION SHIELD infrastructure and Proctor as a subscriber,

County 911/CJDN arrangements, and Proctor policy stating that digital media transferred into Proctor's records-management system is stored on St. Louis County systems and servers. Exhibit N shows Carter attached to the March 10 CAD event as S483, with the identifiers S483, 1PR121, and 1prp0005 appearing in the produced records. The Proctor policy does not prove that Carter made an MVR recording or that a raw Carter video exists on a County server. It does, however, identify County-hosted repositories and concrete indexes, links, unit histories, AVL/CAD activity, equipment mappings, and media-transfer records that can be searched.

The appropriate order is therefore limited: conduct reasonable searches of the identified County repositories; produce responsive recording, index, link, audit, transfer, storage, retention, export, and recovery records; produce records sufficient to map the Carter/S483 identifiers to assigned equipment; and state clearly if no County-hosted Carter/Proctor record ever existed, was deleted, or is maintained only by Proctor outside County possession, custody, or control.

## II. RFP NOS. 3, 23, 32, AND 33 - FORCE REPORTING AND SUPERVISORY REVIEW

RFP No. 3 requests records of detention, handcuffing, force, extraction, and restraint. RFP No. 32 independently requests supervisory, use-of-force, sergeant, administrative, and policy-compliance review generated by the March 10 encounter. RFP No. 33 seeks identities and operational records of supervisors and reviewers. The County made unqualified promises to produce responsive material for RFP Nos. 3, 32, and 33. Ex. B. RFP No. 23 separately seeks policies, training, lesson plans, supervisory guidance, and instructional materials and was only partially answered.

Plaintiff has located narrative material describing physical restraint but has not located a separate force report, supervisor notification, use-of-force review, policy-compliance review, or a definite response that those records were never created. Exhibit Q includes operative recording/force-related policy excerpts showing that these are identifiable record categories. This is a completeness question, not a request that the County manufacture a report.

The order should require production of existing force and supervisory-review records, records sufficient to identify the responsible reviewer, narrowed nonduplicative operative training/guidance, and a categorical response if no report, notification, or review record was created or maintained.

## III. RFP NOS. 4, 5, AND 33 - PHANEUF, GARGANO, SOPHEA CHHIT, JAX, AND PROPERTY

RFP No. 4 requests records of property removed, seized, inventoried, damaged, lost, returned, or unreturned. RFP No. 5 requests records concerning the female occupant and dog. RFP No. 33 reaches participating personnel, squad assignments, CAD/MDT/AVL activity, arrival/departure information, supervisor response, and assisting-agency records. The County did not object to these requests and promised all responsive material. Ex. B.

The March 10 CAD attributes material later-scene activity to Wyatt Phaneuf, including contact with Sophea Chhit, assistance with the vehicle search, discovery of marijuana/paraphernalia, and property taken for destruction. It associates unit S215 with both Phaneuf and Jacob Gargano. The County later disclosed Phaneuf's separate Fleet recording. Yet no separate Phaneuf narrative has been identified, no Gargano narrative has been identified, and the property/evidence record remains incomplete. Exs. D, N.

The March 2 same-well report, Exhibit O, is used only to show that these are concrete record categories: in that earlier event Phaneuf, working with FTO Gargano, prepared a narrative addressing search/property disposition and expressly recorded that squad-camera footage was uploaded. It does not prove that a March 10 supplemental report was required or that anyone intentionally omitted one.

The order should require existing Phaneuf/Gargano participation and S215 assignment records, property/evidence chain records, and records concerning Sophea Chhit and Jax, Plaintiff's dog and personal property, or a categorical no-record response where the requested record was never created or maintained.

## IV. RFP NO. 6 - WRIGHT COUNTY WARRANT AND PROMISE-TO-APPEAR PROCESS

RFP No. 6 expressly requests County-side records concerning the Wright County warrant during or arising from the March 10 encounter, including status, confirmation, execution, clearance, disposition, extradition/transport, sign-and-release handling, and the decision not to execute, transport, or detain. Ex. A. The County objected only to the extent the request reached other incidents and otherwise promised responsive production. Ex. B.

Exhibit K contains the warrant terms and County CAD/dispatch record. The March 10 CAD shows a Wright hit and confirmation and records: "WRIGHT CO CONFIRMS - PTA AND HOEL NEEDS TO COMPLETE A FORM AND GET A COURT DATE." The produced record therefore establishes that a specific Promise-to-Appear/form process was being communicated during the March 10 event. What remains unidentified are the County-side confirmation transaction, form transmission or request, interagency communication, and decision/review records explaining what was done with that confirmed process.

Because the original RFP is expressly tied to March 10, an objection to "other incidents" does not resolve the missing March 10 records. The requested order should be limited to the County-side confirmation, communications, PTA/sign-and-release, form-transmission, court-date and decision/review records, or a definite response that no additional County record exists.

## V. RFP NOS. 12, 13, 15, 17-21, 26, AND 33 - JUNE 2024 ST. LOUIS COUNTY WARRANT / DISPUTED PTA CHAIN

These overlapping requests approach the June 2024 warrant event from different record systems. RFP No. 13 requests the warrant lifecycle from issuance through clearance. RFP Nos. 17 and 18 request every version of the PTA/sign-and-release material and the metadata, audits, users, devices, and routing behind those documents. RFP No. 19 requests St. Louis-Hennepin communications. RFP No. 20 requests the operative warrant/PTA procedures. RFP No. 21 requests authority or decision records concerning release without the stated $1,000 bail. RFP Nos. 12 and 15 reach identity, notice, transmission, service, and hearing-setting records; RFP

No. 26 seeks County-held case-management/upload activity; and RFP No. 33 identifies responsible processors and custodians. Ex. A.

Exhibit L supplies important endpoints. County production SLC 328-331 includes the warrant-confirmation exchange and a Promise to Appear bearing a deputy entry ending in "550," together with a Hennepin-to-St. Louis transmission stating that the PTA would be sent after it was signed. The state-court file contains a separate Sign and Release form and an Index No. 7 package docketed as a Warrant Return of Service. Plaintiff disputes the signature attributed to him, but authenticity is not the relief sought in this motion.

The missing discovery is the County-side processing chain: what form was sent to Hennepin; how and when a completed form was received; source/native versions; users, terminals, routing and transmission records; the source of the July 16 setting; the warrant-status/service/clearance audit; and the County-side filing package. Exhibit C shows that audit, transaction, operator, transmission, and service/clearance categories were already identified in the June 24 deficiency notice. Exhibit H narrowed them again.

The order should compel existing County-held records in these categories, require an appropriate privilege log for actual privilege withholding, and require a definite no-record or outside-custodian response where appropriate. It need not decide whether the disputed PTA is authentic.

## VI. RFP NOS. 2, 7-12, 22, 26, 31, AND 33 - IDENTITY, CITATION, REFERRAL, REOPENING, ROUTING, AND DISMISSAL

RFP No. 2 requests March 10 identity queries. RFP Nos. 7-12 request records behind the citation, Offender Tracking Form, prosecutorial/referral identities, interagency communications, address/identity information, and the basis for connecting Plaintiff to the citation, case, warrant, and later court dates. RFP No. 22 requests dismissal, reopening, reassignment, prosecutorial-routing, transfer, and related communications. RFP No. 26 reaches County-held electronic case

activity. RFP No. 31 requests CAD/RMS/event classifications. RFP No. 33 identifies the people who reviewed, approved, processed, or coordinated these actions. Ex. A.

Exhibit M shows why the remaining routing questions are concrete. The produced Offender Tracking Form has no fingerprint submission recorded and leaves the prosecutor section blank. The later production contains a July 2024 City dismissal/reopening chain in which the City recognized that the matter belonged to the County, followed by a July 17 ReferralTransferReport. That report is evidence of an electronic referral event; it does not itself identify the complete initiating user, system routing, destination, recipient/acceptance, or prosecutor-assignment history. The production also includes an August 9, 2024 prosecutor email to Prouse leading toward final dismissal. Plaintiff does not seek the prosecutor's legal research or privileged deliberations; he seeks nonprivileged factual/routing/status communications and transaction records.

The County largely promised complete production for these requests. The order should require the remaining identity-query/access, review/approval, event-classification, referral transaction, City-to-County handoff, assignment, and nonprivileged factual/routing records concerning reopening, continued prosecution, and final dismissal, or clear statements that no additional County-held record exists.

## VII. RFP NOS. 14, 23-25, AND 29 - TRAINING, PROUSE COMPLAINTS, COMPARATORS, AND SOURCE INCIDENTS

RFP Nos. 14 and 23 request policies, actual training, supervisory guidance, lesson plans, and instructional materials on obstruction, identification demands, detention, force, recording, property, evidence, and warrant handling. The County expressly stated that responsive material beyond the incident-date policy manual was being withheld. Ex. B. Plaintiff credits the policy manual and seeks only narrowed nonduplicative material actually in effect or used to train Prouse on the subjects identified in Exhibit H.

RFP No. 24 is Prouse-specific. It requests complaints, internal affairs, supervisory reviews, corrective action, misconduct investigations, and discipline involving the listed subjects. The County objected but expressly stated that responsive material was not being withheld under that objection. The remaining question is simple: identify the responsive production or state by category that no responsive Prouse record exists.

RFP No. 25 is the broader comparator request and expressly includes complaints, investigations, lawsuits, claims, and disciplinary findings involving closely related alleged misconduct. The County expressly stated that responsive material was being withheld. Plaintiff narrowed immediate relief to an existing index, log, database report, spreadsheet, claim list, lawsuit list, or complaint register capable of identifying closely comparable matters from 2020-2024. Ex. H. That first-stage production is proportional and avoids demanding every underlying file.

RFP No. 29 requests only source incidents known to or relied upon by Prouse before the March 10 contact. The County produced SLC 326 and four reports and stated that no police reports existed for the remaining listed incidents. Plaintiff credits that response. Remaining relief is limited to available CAD/call/unit source records for incidents Prouse actually knew of or relied upon, or a clear statement that no additional responsive source record exists.

## VIII. RFP NOS. 16 AND 30 - LIMITED REMAINING ISSUES

RFP No. 16 requests hearing audio, minutes, notes, logs, and related records to the extent they exist. The County promised responsive material in its possession, custody, or control. Plaintiff does not ask the County to produce court records it does not control. Any responsive County-held copy should be produced; otherwise the response can identify the court or other outside custodian.

RFP No. 30 requests operative mutual-aid and interagency agreements. County counsel's August 27 email identifies SLC 81-128 as the agreements production. Plaintiff credits those documents and relies on them in Exhibit P primarily as evidence of the shared systems relevant to RFP Nos.

1, 31, and 33. No additional agreement production should be ordered if SLC 81-128 is the complete incident-date operative set. A supplemental statement that the set is complete is sufficient.

## IX. DEFINITE SUPPLEMENTAL RULE 34 RESPONSES ARE A NARROW AND PRACTICAL REMEDY

A recurring problem is that a response promising "all responsive material" does not tell the parties whether an unlocated category never existed, existed but was lost or deleted, is held only by an outside custodian, or is being withheld. Plaintiff repeatedly asked the County to distinguish among those situations. Exs. C, E, H.

That clarification does not require creation of substantive evidence. It asks the County to complete its Rule 34 response after reasonable inquiry. Rule 34(b)(2)(C) separately requires an objection to state whether responsive material is being withheld. Rule 26(e) requires timely supplementation when a response is materially incomplete and the correction has not otherwise been made known. A categorical supplemental response is therefore a narrow remedy that will prevent the parties from continuing to argue past one another.

For any actual privilege withholding, a privilege log or equivalent description under Rule 26(b)(5)(A) will permit the parties and Court to assess the claim without compelling privileged substance.

## CONCLUSION

Plaintiff respectfully requests that the Court grant the Motion to Compel and enter the proposed order. Exhibit J accounts for every RFP No. 1 through 33; the proposed order groups overlapping requests by subject but limits relief to the unresolved portion identified in the record. Plaintiff does not seek spoliation sanctions, attorney's fees, or an authenticity determination through this motion.

Dated: August 28, 2026

/s/ Robert Brooks Hoel

Robert Brooks Hoel
Plaintiff, In Propria Persona
General Delivery
Duluth, Minnesota
bobhoel@gmail.com