# EXHIBIT H

August 23 Final Rule 37 Letter

Plaintiff's final Rule 37 conference letter identifying the narrowed unresolved County RFP deficiencies.

Hoel v. Prouse, No. 0:25-cv-02342-ECT-LIB

August 23, 2026

**VIA EMAIL**

**Re: Hoel v. Prouse, No. 0:25-cv-02342-ECT-LIB**

## Final Rule 37 Conference Regarding County RFP Deficiencies

Nick:

I have completed a further review of the County Defendants' June 22 responses, the June 23 production, the August supplemental production, and the connected Wright County and Hennepin County warrant records. I have credited the materials produced and narrowed the remaining issues below.

This letter concerns my May 21 First Joint Requests for Production and the deficiencies previously identified in my June 24 and August 9 correspondence. It does not serve new requests. It is my final good-faith effort to determine what the County possesses, what no longer exists, what was never created, and what the County continues to withhold before seeking relief under Rule 37 and Local Rule 37.1.

For each category below, please state during our conference whether: (1) responsive County records exist and will be produced; (2) no responsive County record was ever created or maintained; (3) a responsive record existed but is no longer available, identifying the date, reason, retention rule, and known custodian; (4) the record is held only by an identified outside custodian and is outside the County Defendants' possession, custody, or control; or (5) responsive material is being withheld, identifying the category and specific objection or privilege.

### 1. RFP No. 6 - March 10, 2022 Wright County warrant confirmation and non-execution

The County's own production establishes that Prouse received a hit for Wright County warrant 86-CR-16-4175-2. The warrant return instructed officers to immediately confirm with Wright County and stated: "SIGN A PROMISE TO APPEAR AND PROVIDE UPDATED CONTACT INFORMATION AND RELEASE WITH A NEW COURT DATE." The CAD record then states: "WRIGHT CO CONFIRMS - PTA AND HOEL NEEDS TO COMPLETE A FORM AND GET A COURT DATE."

The dispatch audio further records that Wright County had a PTA form available to email or fax. Prouse responded that he probably could not print it from his squad and would instead advise me about the warrant. His police narrative later states only that dispatchers verified Wright County "would not extradite HOEL." It does not disclose the offered PTA form, the required updated information and court date, his stated inability to print the form, or his decision not to complete the warrant process.

The return also states "PICK UP MN ONLY" and "BODY ONLY MN ONLY NOEX." The encounter occurred inside Minnesota. Please produce any County record interpreting those entries or treating "NOEX" as authorization to disregard the express Minnesota-only PTA instructions.

The significance is no longer hypothetical. Wright County's records show that the warrant remained active after the stop; Wright received a NEMESIS police-contact entry dated March 17, 2022; and on April 19, 2022 a Wright court clerk identified as Oksana brought an existing $500 cash-bail balance to the judge while describing me as remaining in "fugitive status." The judge then ordered the bail forfeited. The same Wright warrant remained active until it was cleared during my June 2024 Hennepin detention.

Please complete RFP No. 6 by producing or identifying:

- **a.** the complete County-side warrant confirmation, including the call, radio, CAD, MDT, CJDN/NCIC/Portal XL, teletype, message, note, and other communication records between County personnel and Wright County;
- **b.** records sufficient to identify dispatch user "203," every County employee who communicated with Wright County, and the known Wright County participant identified in the County's records;

- **c.** every County record concerning the offered PTA form, the method by which Wright offered to transmit it, whether it was transmitted, and any request, refusal, inability, or decision not to obtain, print, complete, or return it;
- **d.** every County record concerning the decision not to execute or complete the warrant process, including consultation with a supervisor, release authorization, report review, report approval, or policy determination;
- **e.** records concerning any County transmission that generated or supplied the March 17 NEMESIS police-contact notification to Wright County, including the data transmitted, originating system, user, date, incident number, and disposition supplied;
- **f.** any later County-held communication from or to Wright County concerning the March 10 encounter, warrant status, PTA handling, release, court-date assignment, or continued warrant activity; and
- **g.** report drafts, supplements, review notes, or approval records addressing the difference between the confirmed PTA procedure shown by CAD/audio and the report statement that Wright County "would not extradite."

I am not asking the County Defendants to produce Wright County's independent files. I am asking for the County Defendants' side of the communications, operational decision, reporting, review, and automated or interagency transmissions expressly covered by RFP No. 6. If no additional County-side record exists for an item, please say so expressly.

### 2. RFP Nos. 13 and 17-21 - June 2024 Hennepin execution and clearance of the resulting St. Louis County warrant

The produced and connected records show that Hennepin requested confirmation of St. Louis County warrant 69DU-CR-22-695-1; St. Louis County confirmed the warrant through personnel identified in the transmission as Blom and authorizing Sgt. Lurye; St. Louis County instructed that I could be released after completing a PTA and providing contact information; Hennepin operator Hodges later stated that the PTA would be sent when signed; and the resulting PTA bears deputy number 550, whom the Hennepin booking record identifies as Schafhauser. The County production does not contain the complete execution, receipt, processing, clearance, and filing chain.

Please produce:

- **a.** the complete incoming Hennepin confirmation request and County response, in native or complete transmitted form, with transaction identifiers, routing, timestamps, and attachments;
- **b.** the blank PTA or other form sent by St. Louis County to Hennepin, with its transmission record;
- **c.** the actual later transmission by which the signed PTA was received, including the attachment, sender, recipient, time, routing, and receipt confirmation;
- **d.** every County-held version of SLC 328-331 and court Index Nos. 6 and 7, including native files, scans, filenames, attachments, drafts, and replacement history. The same or substantially identical PTA appears at SLC 15, SLC 330, and in court Index No. 7; please identify the source and history of each copy;
- **e.** records identifying every County user, account, terminal, mailbox, workstation, or filing account that received, opened, saved, printed, scanned, routed, reviewed, transmitted, uploaded, or filed those records;
- **f.** the County-side warrant-status audit showing when and by whom the warrant changed from active to served or cleared, the source record relied upon, and the release instruction;
- **g.** the County-side filing package by which the warrant return and PTA reached Court Administration, including submitter, filing code, native attachment, timestamps, and acceptance or rejection confirmation; and
- **h.** records showing who supplied the July 16, 2024 court setting and what address and contact information were used.

### 3. RFP Nos. 1, 27, 28, 30, and 33 - all cameras, recording stops, and Carter/Proctor footage

SLC 985-988 identify the produced/deleted recordings as rear-oriented Fleet 2 IR-camera recordings for Prouse and Phaneuf. No front-camera recording, audit trail, deletion record, or explanation was produced for either squad.

Please produce the vehicle and device inventory identifying every camera component installed in both squads; every front-camera recording or its complete audit/deletion history; the before-and-after value and reason for each August 2022 retention update; the operative category-to-duration configuration; every preservation hold, export, download, backup, derivative, thumbnail, proxy, screenshot, or recovery record; and a definite statement identifying whether any recoverable component remains and who has custody of it.

Please also produce the complete activation and deactivation history for both systems, including every time each camera or recording segment turned on, turned off, paused, resumed, disconnected, or restarted; the associated timestamp; whether the transition resulted from an event-button hold, Axon View XL, another user action, automatic trigger, power event, error, or system process; and the responsible user or device. This must include every Phaneuf rear-IR-camera segment and gap while he was on scene, not merely the final stop event. Please identify whether any additional segment was created before or after each interruption and produce its recording or audit/deletion history.

Joe Carter also participated in the encounter. Please produce every County-held Carter/Proctor recording, transfer, request, receipt, review, preservation notice, deletion notice, audit record, or communication concerning Carter's video. If the County contends the footage is held only by Proctor and outside its possession, custody, or control, identify the known custodian and state whether the County requested, received, reviewed, possessed, downloaded, or relied upon it at any time. Please also identify the operative agreement or practice governing custody and control of evidence created during the joint response.

### 4. RFP Nos. 3, 23, and 32 - force reporting and supervisory review

Prouse's narrative describes pulling my arm, applying knee and shoulder pressure, pushing me against the vehicle, handcuffing me, and confining me in the squad. The production includes use-of-force reporting, notification, and supervisory-review policies but no separate force report or review record.

Please produce every force entry, report, supervisor notification, supervisor or lieutenant review, policy-compliance review, report-approval record, and record addressing the "NO FORCE" classification. If none exists, state separately whether no force report was created, no supervisor was notified, no supervisor or lieutenant reviewed the force, and no policy-compliance determination was made.

### 5. RFP Nos. 4, 5, and 33 - Phaneuf, Gargano, Chhit Uoksophea, the dog, and seized property

No separate report by Deputy Wyatt Phaneuf was produced. CAD states that Phaneuf spoke with female driver Chhit Uoksophea, assisted with the vehicle search, found marijuana and paraphernalia, and took those items for destruction. His rear-IR-camera audit reflects recording activity turning on and off during his involvement, but the production does not explain how those recording segments and gaps correspond to his on-scene actions. No separate record identifies the dog, placement of Chhit or the dog in Phaneuf's squad, the complete scope of Phaneuf's actions, or the required property/evidence handling.

Please produce every report, supplement, note, CAD/MDT entry, communication, AVL/GPS record, recording, property record, inventory, receipt, chain-of-custody record, destruction record, or supervisory record concerning Phaneuf's participation; Chhit or the dog; and the marijuana, paraphernalia, phones, or other property handled during the encounter. Please also produce records sufficient to correlate each Phaneuf camera activation, deactivation, segment, and gap with his arrival, contact with Chhit, any placement of Chhit or the dog in his squad, the vehicle search, seizure of marijuana or paraphernalia, removal or destruction of property, and departure. If Phaneuf created no separate report and no additional responsive record exists, please state that expressly by category.

The CAD production associates unit S215 with both Wyatt Phaneuf and Jacob Gargano. Please produce the assignment, unit-login, CAD, MDT, AVL/GPS, report, note, communication, and recording records sufficient to establish whether

Gargano participated, possessed or reviewed evidence, or was merely associated with the same unit identifier. If Gargano had no role, identify the record establishing why both names appear under S215.

### 6. RFP Nos. 2, 7-12, 22, and 33 - identity, obstruction theory, citation, referral, dismissal, and reopening

Please produce the County-held SHIELD result, access record, query history, photograph or other return used to identify me; the source of the identifying information; and records identifying who accessed or relied upon it.

Please also produce the nonprivileged drafts, notes, review records, approval records, communications, and transmissions showing how refusal to identify and the reported physical conduct became Citation No. 690088206901 and the obstruction allegation; why the Offender Tracking Form stated that fingerprints were not submitted; who reviewed or approved Prouse's report and citation; and who later referred or advanced the case.

The production includes the dismissal, effort to reopen the mistakenly dismissed County matter, referral activity, and the August 9, 2024 prosecutor communication concluding that the known conduct did not satisfy either charged form of obstruction. Please produce the complete nonprivileged County-side communications and routing records concerning initiation, dismissal, reopening, referral, reassignment, continued prosecution, and final dismissal, including communications to or from Prouse after the prosecutor concluded that the charge was legally insufficient.

### 7. RFP Nos. 14 and 23 - actual operative training and guidance

I credit production of the January 10, 2022 policy manual. Please produce the nonduplicative materials in effect or actually used to train Prouse as of March 10, 2022 concerning obstruction based on speech, refusal to identify, or physical conduct; identification demands; detention and handcuffing; use-of-force reporting and review; public recording of police; property and recording-device handling; Fleet 2 activation, categorization, preservation, and retention; and warrant-hit/PTA handling. If no material exists beyond the manual, state that separately for each topic.

### 8. RFP Nos. 24 and 25 - Prouse complaints and narrowly comparable matters

For RFP No. 24, please state whether any complaint, internal-affairs matter, supervisory review, corrective action, investigation, or discipline involving Prouse during the requested period concerned force, detention, obstruction, identification, report accuracy, recording interference, property handling, evidence preservation, or warrant processing. Produce responsive nonprivileged records or expressly state that none exists by category.

For RFP No. 25, I narrow the immediate request to an existing index, log, database report, spreadsheet, claim list, lawsuit list, or complaint register for January 1, 2020 through December 31, 2024 capable of identifying closely comparable allegations involving unsupported obstruction, identification demands, detention or force, interference with recording, lost or unreturned property, evidence-preservation failures, or warrant irregularities. If the County maintains its objection, identify the searches performed, approximate number of responsive matters, categories withheld, and concrete burden asserted.

### 9. RFP Nos. 29 and 33 - source incidents and responsible personnel/custodians

For the incidents listed at SLC 326 that Prouse knew of or relied upon before contacting me, produce the available CAD, call, incident, and unit-activity records or state that none exists. Please also produce records sufficient to identify dispatch user 203; Prouse's report reviewer or approver; the responsible force reviewer; Phaneuf and Gargano's recorded assignments to unit S215; the camera-retention and deletion personnel; the March 2022 warrant-confirmation personnel; the June 2024 warrant processors and filing personnel; and the records custodians who performed the searches supporting the County's discovery responses.

## Existing nonparty document subpoenas

On August 14, 2026, I provided both defense groups with Rule 45(a)(4) notice and copies of the five nonparty document subpoenas identified in that notice. Those subpoenas permit electronic production by September 8 without a personal appearance, and my notice stated that no response from Defendants was required. They proceed separately from the County Defendants' obligations under the previously served RFPs. I mention them here only to avoid duplication and to determine whether the County maintains that any responsive category is held exclusively by a nonparty and outside the County Defendants' possession, custody, or control.

### Conference and Wyatt Phaneuf deposition

Your automatic reply states that you are out of the office until Monday, August 24. No motion-to-compel hearing has been scheduled at this time. I recognize that this letter requires meaningful review and propose 10:13 a.m. Tuesday, August 25, for our telephone conference. If that time does not work, I am available at any other time Monday or Tuesday that works for you. Please reply with your preferred time. We can use the numbered sections above as the conference agenda, and you do not need to prepare a separate written response before the call.

During the conference, please identify what the County will produce, what does not exist, what is being withheld, the responsible custodian, and a firm date for each promised supplementation. After the conference, I will send a written summary of the positions and commitments discussed. If my summary is inaccurate in any respect, please correct it promptly so the matters remaining for court resolution are clearly defined.

This letter also provides my first direct notice that I intend to depose Wyatt Phaneuf before the current September 15 discovery cutoff. Before I complete and serve an AO 88A subpoena, please state whether you represent Phaneuf for purposes of the deposition, whether you are authorized to accept service for him, whether the County will produce him voluntarily, every date on which he is available before September 15, and any specific position you maintain concerning the proposed subjects of his testimony described above. My willingness to hear and consider the County's position and coordinate reasonable logistics does not withdraw or condition my intention to take his deposition.

For the other supervisors, reviewers, users, and custodians described above, I am presently requesting their identities, roles, records, and the searches they performed. I am not asking in this letter to schedule their depositions. Their testimony can be evaluated after the Court decides the requested scheduling extension and after the remaining records and names are disclosed.

I am willing to discuss reasonable custodians, search terms, date limits, redactions, staged production, or other proportional means of resolving these issues. Please identify each category the County will supplement, each category for which no record exists, and each issue the County maintains as disputed.

Respectfully,

Robert Brooks Hoel
Plaintiff, Pro Se
Telephone: 612-234-2169
bobhoel@gmail.com